FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 31, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARRY A.,[1] <br>            Plaintiff, <br><br>     vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>            Defendant. | No. 1:19-cv-03122-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7.  The Court, having reviewed the administrative record and the parties' briefing,

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2 severity of the enumerated impairments, the Commissioner must pause to assess

3 the claimant's "residual functional capacity." Residual functional capacity (RFC),

4 defined generally as the claimant's ability to perform physical and mental work

5 activities on a sustained basis despite his or her limitations, 20 C.F.R. §

6 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

7    At step four, the Commissioner considers whether, in view of the claimant's

8 RFC, the claimant is capable of performing work that he or she has performed in

9 the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

10 capable of performing past relevant work, the Commissioner must find that the

11 claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

12 performing such work, the analysis proceeds to step five.

13    At step five, the Commissioner considers whether, in view of the claimant's

14 RFC, the claimant is capable of performing other work in the national economy.

15 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

16 must also consider vocational factors such as the claimant's age, education, and

17 past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

18 adjusting to other work, the Commissioner must find that the claimant is not

19 disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

20

other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 23, 2016, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of October 19, 2007.[3] Tr. 217-26, 229-37. The applications were denied initially, and on reconsideration. Tr. 114-29, 132-43. Plaintiff appeared before an administrative law judge (ALJ) on May 23, 2018. Tr. 32-54. During the hearing, Plaintiff amended his disability onset date to May 23, 2016 and withdrew his application for Title II disability insurance benefits. Tr. 35-36. On June 26,

---

[3] The alleged disability onset date of October 19, 2007 is reflected in Plaintiff's Disability Determination Explanation forms at both the initial, Tr. 57, 71, and reconsideration levels, Tr. 87, 97, and in the ALJ's decision, Tr. 16.

2018, the ALJ dismissed Plaintiff's Title II claim and denied Plaintiff's Title XVI claim. Tr. 13-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 23, 2016. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disorder (COPD), neurocognitive disorder, and unspecified depressive disorder. Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] must avoid concentrated exposure to pulmonary irritants; he is limited to unskilled and well-learned semi-skilled work; and he can have only superficial contact with the public.

Tr. 21.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, motor vehicle assembler, and floor waxer. Tr. 25-26. Therefore, the ALJ concluded that Plaintiff was not under a disability,

as defined in the Social Security Act, from the date of the application though the date of the decision.  Tr. 26.  Alternatively, the ALJ determined that even if he were to find Plaintiff more limited, as outlined in his second hypothetical to the vocational expert during the hearing, Plaintiff would still not be disabled.[4]  Tr. 26.

On March 26, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

---

[4] The ALJ limited the second hypothetical individual to medium work, and stated that the individual could never climb ladders, ropes or scaffolds, could occasionally perform all other postural activities, could tolerate only moderate noise exposure, could not have concentrated exposure to pulmonary irritants, could have no exposure to hazards such as unprotected heights and moving mechanical parts, was limited to simple, routine, repetitive work with a skill level of two or less, needed a routine, predictable work environment with no more than occasional changes and simple decision making, could have no contact with the public and only occasional official contact with supervisors and co-workers, and could not work at an assembly line pace or do other fast paced work.  Tr. 50.  In response, the vocational expert testified that such a hypothetical individual would be able to perform the jobs of kitchen helper, floor waxer, and industrial cleaner.  Tr. 49-50.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ fulfilled his duty to fully and fairly develop the record;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 2.

**DISCUSSION**

**A.     ALJ's Duty to Develop the Record**

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 14 at 20-21. The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an

appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Plaintiff asserts the ALJ erred by declining to obtain medical expert testimony upon Plaintiff's attorney's request to determine the feasibility of Plaintiff's allegation of severe side effects from his anticonvulsant medication, Keppra. ECF No. 14 at 21. However, Plaintiff's attorney's mere request for a medical expert does not trigger the ALJ's duty to develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered *only when* there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (emphasis added). Plaintiff fails to identify any ambiguity in the record to trigger the ALJ's duty to develop the record. ECF No. 14 at 20-21. Rather, the ALJ noted that with respect to Plaintiff's primary complaint of diarrhea as a side effect of Keppra, Plaintiff had never complained about this side effect to the neurologist who prescribed the medication, and he only mentioned it once to another provider. Tr. 23, 358; *see, e.g.,* Tr. 341 (July 30, 2015: Plaintiff's neurologist prescribed anticonvulsant medication for the first time); Tr. 338 (September 30, 2015: Plaintiff's neurologist noted that Plaintiff was up to the full dose of Keppra; Plaintiff complained of being very sleepy at first, feeling more depressed, feeling like he could not function, and feeling a little "fuzzy," so his neurologist

recommended that Plaintiff continue with a slightly lower dose of Keppra); Tr. 346 (July 29, 2016: in his psychological evaluation, Plaintiff reported that his medication affected his appetite, but he did not mention diarrhea as a side effect of his medication); Tr. 394 (August 9, 2017: in a follow-up physician's visit for hypertension, Plaintiff reported that he continued with Keppra and the provider noted Plaintiff "appears to be tolerating this."). Based on this record, the ALJ determined that the absence of a pattern of complaints to providers and the failure to follow-up with his neurologist to resolve the symptoms showed that this gastrointestinal side effect of Keppra was not as significant an issue as Plaintiff alleged at the hearing. Tr. 23. Accordingly, the record was not ambiguous as to the feasibility of Plaintiff's allegations of severe side effects from his anticonvulsant medication. The ALJ had no duty to develop the record on this issue.

## B. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 14 at 4-13. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Not Supported by Objective Medical Evidence

The ALJ found that Plaintiff's symptom complaints were not supported by the objective medical evidence. Tr. 22. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by the objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

Cir. 1991). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Here, the ALJ discussed Plaintiff's alleged symptoms that caused him to be unable to work, such as depression, history of concussions, short-term memory loss, seizures, controlled high blood pressure, body aches and pain, and attention deficit hyperactivity disorder (ADHD). Tr. 22 (citing Tr. 267). The ALJ cited Plaintiff's reports that his impairments affected his memory, as well as his ability to complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 22 (citing Tr. 279). The ALJ also cited Plaintiff's allegations that he angered quickly and forgot what he was doing, did not handle stress or change well, and did not get along with authority figures. Tr. 22 (citing Tr. 287-88). The ALJ referenced Plaintiff's testimony that his anticonvulsant medication caused him to have to use the restroom for 40 minutes every morning, and then average an hour and a half of unplanned time in the restroom split over three times a day. Tr. 22, 43. However, the ALJ found there were only three treatment notes in the record during the relevant period, and observed that each dealt "with routine matters, like running labs and monitoring hypertension and cholesterol." Tr. 23 (citing Tr. 352-54, 358-62, 364-373, 391-95). Further, the ALJ cited findings from

the treatment notes, such as Plaintiff's normal heart function, full motor strength, intact neurologic function, and normal gait in finding that Plaintiff's allegations were not supported by the objective medical evidence. Tr. 22; *see, e.g.,* Tr. 352, 358, 361, 365-66 (July 2015, August 2015, September 2015, March 2016, August 2016: Plaintiff had normal heart function); Tr. 370 (July 2015: Plaintiff had normal heart function, full strength in upper and lower extremities, intact neurological function, and normal gait); Tr. 352, 358, 361 (September 2015, March 2016, August 2016: Plaintiff reported that he was feeling well).

Plaintiff argues that the ALJ provided only a general summary of the evidence and failed to provide clear and convincing reasons for why the objective medical evidence contradicted any of Plaintiff's specific allegations. ECF No. 14 at 11. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded, based on this record, that the objective medical evidence did not support the level of impairment alleged by

Plaintiff.  Tr. 22.  The ALJ's finding is supported by substantial evidence and was a clear and convincing reason, in conjunction with Plaintiff's failure to seek treatment, inconsistency with activities, and poor work history, *see infra*, to discount Plaintiff's symptom complaints.

2.  *Failure to Seek Treatment*

The ALJ found that Plaintiff's symptom complaints were inconsistent with his failure to seek treatment for his mental impairments and gastrointestinal side effects from his seizure medication.  Tr. 23.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating a claimant's subjective symptoms.  *Orn*, 495 F.3d at 638.  Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 Fed. App'x 45, *2 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment).  When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints.  *Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental health treatment is partly due to a

claimant's mental health condition, it may be inappropriate to consider a

claimant's lack of mental health treatment when evaluating the claimant's failure

to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

First, the ALJ determined that Plaintiff's lack of treatment for his mental

impairments detracted from the reliability of his allegations about his mental state.

Tr. 23. Although Plaintiff reported that he was unable to work due to depression,

Tr. 267, problems getting along with others, Tr. 279, and the inability to handle

stress or change well, Tr. 288, the ALJ noted that Plaintiff had not sought any

mental health treatment. Tr. 23. Instead, the ALJ found there were only three

treatment notes in the record during the relevant period, and observed that each

dealt "with routine matters, like running labs and monitoring hypertension and

cholesterol." Tr. 23 (citing Tr. 352-54, 358-62, 364-373, 391-95). The ALJ also

cited Plaintiff's testimony that he did not feel like he needed mental health

treatment, and he felt as if he had been getting all the treatment he needed. Tr. 22-

23 (citing Tr. 38-39). Plaintiff argues the ALJ failed to consider that he had

limited insight into the nature of his impairments, citing his testimony that he did

not think mental health treatment was needed because he did not "think to kill

myself or shoot anybody else." ECF No. 14 at 5-6 (citing Tr. 39, 344). While

Plaintiff's psychological evaluator noted that his "[i]nsight into his condition was

fair/limited," she also reported that Plaintiff was "managing mental health

symptoms with medication," and Plaintiff had participated in anger management therapy approximately five years prior to the evaluation and found it to be helpful. Tr. 344. Based on this record, the ALJ reasonably determined "[t]he fact that he does not feel the need for any significant treatment shows how minimally limiting his symptoms are." Tr. 23.

Next, the ALJ found that Plaintiff's alleged disabling limitations due to diarrhea as a medication side effect were inconsistent with his failure to report the symptoms to providers or seek treatment to resolve the symptoms. Tr. 23. The ALJ noted that Plaintiff testified his anticonvulsant medication, Keppra, caused him to have to use the restroom for 40 minutes every morning and then average an hour and a half in the restroom split over three times a day, and he could not plan those restroom breaks. Tr. 42-45. However, the ALJ found that Plaintiff had never complained about diarrhea as a side effect to the neurologist who prescribed Keppra, and he only mentioned it once to one other provider. Tr. 23, Tr. 358. The ALJ found that if this gastrointestinal side effect was as significant an issue as Plaintiff claimed, Plaintiff would have sought more follow-up with his neurologist to resolve it, and there would have been a pattern of complaints to providers. Tr. 23. The ALJ reasonably determined that Plaintiff's lack of treatment during the relevant period was inconsistent with his claims of a disabling side effect from his

medication.  This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 3. Inconsistent with Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged.  Tr. 24.  An ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ indicated that Plaintiff reported he was unable to work due to depression, history of concussions, short-term memory loss, seizures, controlled high blood pressure, body aches and pain, and ADHD.  Tr. 22 (citing Tr. 267).  The ALJ noted that Plaintiff alleged his conditions affected his memory and his ability to complete tasks, concentrate, understand, follow instructions, get along

ORDER - 19

with others, and handle stress or change well.  Tr. 22 (citing Tr. 279, 288).

However, the ALJ noted that Plaintiff's allegations of disabling impairments were

inconsistent with his "extremely high-functioning activities of daily living."  Tr.

24.  The ALJ observed that Plaintiff reported he lived independently, cared for

animals, made his own simple meals, did laundry, mowed the lawn, pulled weeds,

changed sprinklers, went out alone, shopped in stores, and spent time with his

brother.  Tr. 24 (citing Tr. 346).  The ALJ also noted that Plaintiff reported being

busy camping, he maintained social friendships, and he was a member of a rodeo

club.  Tr. 20, 24 (citing Tr. 346-47, 361).  The ALJ cited Plaintiff's testimony that

he could lift 50 pounds and could probably lift something more than 50 pounds as

long as he did not have to do it multiple times, he lifted a pressure washer a few

weeks before the hearing and used the pressure washer to clean a slab, he

constructed a 40x80 pole building by himself in four months, used a tractor, and

lifted heavy materials for four to six hours a day.  Tr. 22, 40-42.  The ALJ

reasonably concluded that these activities were inconsistent with the debilitating

level of impairment Plaintiff alleged.  Tr. 24.

Plaintiff challenges the ALJ's finding by asserting that the majority of

activities cited by the ALJ "are actually just standard, everyday activities," none of

which were shown to be contradictory to his allegations or demonstrative of any

transferable work skill.  ECF No. 14 at 9-10.  Plaintiff also argues that the ALJ

ORDER - 20

failed to recognize any of the self-limitations Plaintiff used when constructing the building or using a pressure washer. ECF No. 14 at 10-11. An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than he alleged. Tr. 22, 24. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 4. Poor Work History

The ALJ found that Plaintiff's work history suggested a lack of credibility. Tr. 24. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959; *Smolen*, 80 F.3d at 1285; 20 C.F.R. § 416.929(c)(3) (work record can be considered in assessing credibility). The ALJ noted that Plaintiff had a "weak, inconsistent work history" suggesting that his unemployment was "likely something of longer standing than his current medical condition." Tr. 24. Plaintiff argues that he worked more consistently until 2007, when he suffered a head injury from falling off of a building. ECF No. 14 at 8. However, Plaintiff's certified earnings records show that beginning in 1980, when Plaintiff turned 18 years old, he earned less than $10,000 every year except for

ORDER - 21

1984, 1989-92, 2001-02, and 2005-07.  Tr. 257-58.  The ALJ's conclusion is supported by substantial evidence.

## C.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Diane Rubin, M.D., Richard Sloop, M.D., E. Andrea Shadrach, Psy.D., Michael L. Brown, Ph.D., and Eugene Kester, M.D.  ECF No. 14 at 13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

*1. Dr. Rubin*

State agency physician Diane Rubin, M.D., reviewed Plaintiff's medical record through October 2016 and completed a physical residual functional capacity assessment. Tr. 104-06. Dr. Rubin found that Plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. Tr. 104. She opined that Plaintiff could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. Tr. 104. She opined that Plaintiff could frequently stoop, kneel, and crouch, could occasionally balance, crawl, and climb ramps and stairs, and could never climb ladders, ropes,

or scaffolds.  Tr. 105.  She determined that Plaintiff should avoid concentrated exposure to noise, pulmonary irritants, and hazards.  Tr. 105-06.

The ALJ gave Dr. Rubin's opinion some weight, rejecting Dr. Rubin's opined noise and exertional limitations.  Tr. 24.  Because no other provider rendered an opinion reflective of Plaintiff's physical complaints, the Court assumes without deciding that the ALJ was required to provide clear and convincing reasons to discredit Dr. Rubin's opinion as to Plaintiff's noise and exertional limitations.  *Bayliss,* 427 F.3d at 1216.

### a.  Failure to Quantify Noise Limitation

The ALJ rejected Dr. Rubin's opined noise limitation, finding that she failed to quantify the limitation.  Tr. 24.  An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."  *See Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 601 (9th Cir. 1999).  Plaintiff argues that the ALJ's finding was erroneous because Dr. Rubin did quantify Plaintiff's noise limitation.  ECF No. 14 at 16.  Here, Dr. Rubin specifically opined that Plaintiff had limited hearing in both ears and thus, Plaintiff was to avoid concentrated exposure to noise.  Tr. 105-06.  Dr. Rubin explained that Plaintiff "can still hear talking conversation but should avoid concentrated exposure to noise," and that he could have moderate exposure where he needed to pay attention to low volume noise or speech.  Tr. 105.  Because Dr.

Rubin did quantify Plaintiff's noise limitation, this was not a clear and convincing reason to reject Dr. Rubin's opinion.

However, such error is harmless for two reasons. First, in an alternative hypothetical to the vocational expert, the ALJ added Dr. Rubin's opined limitation to moderate noise exposure. Tr. 50; *see* Tr. 105. In response, the vocational expert testified that such a hypothetical individual would be able to perform the jobs of kitchen helper, floor waxer, and industrial cleaner. Tr. 49-50. As a result, the ALJ noted in his decision that even if he were to find Plaintiff more limited, as outlined in his second hypothetical to the vocational expert, Plaintiff would still not be disabled. Tr. 26. Second, the ALJ provided another clear and convincing reason, *see infra*, to discredit Dr. Rubin's opinion as to Plaintiff's noise limitation. *Molina,* 674 F.3d at 1115.

### b. Inconsistent with Objective Medical Evidence

The ALJ found that Dr. Rubin's opined noise limitation was inconsistent with the objective record. Tr. 24. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the

record.  20 C.F.R. § 416.927(c)(4).  The ALJ noted that although Plaintiff's

audiology report showed some hearing loss, his speech recognition scores were

100% bilaterally.  Tr. 19; *see, e.g.* Tr. 334 (October 2015: treatment notes showed

that Plaintiff experienced bilateral conductive hearing loss); Tr. 378 (September

2015: treatment notes showed that Plaintiff's speech recognition scores were 100%

in the right and left ears).  This was a clear and convincing reason supported by

substantial evidence to discount Dr. Rubin's opined noise limitation.

Further, the ALJ determined that Dr. Rubin's opined exertional limitations

were inconsistent with the objective record.  Tr. 22, 24; *see, e.g.,* Tr. 369-70 (July

2015: Plaintiff denied coughing or shortness of breath; an examination showed

clear auscultation bilaterally of the lungs, normal heart function, full motor

strength, intact neurologic function, and Plaintiff's gait was within normal limits);

Tr. 358-59 (March 2016: Plaintiff reported that he was feeling well but suspected

he may have COPD because of intermittent wheezing and coughing in the

morning, he denied shortness of breath; an examination showed oxygen saturation

at 98%, normal heart function, and clear lungs; a chest x-ray showed possible

COPD and Plaintiff was prescribed an albuterol inhaler); Tr. 352 (August 2016:

Plaintiff reported that he was feeling well and denied a cough; an examination

showed normal heart function and good air entry of the lungs but a faint expiratory

wheeze); Tr. 376-77 (August 2016: a pulmonary function test showed only mild

airflow obstruction); Tr. 393-94 (August 2017: Plaintiff denied shortness of breath and reported that he used his inhaler as needed, not daily; an examination showed normal heart function and good air entry of the lungs but faint expiratory wheezes; Plaintiff was diagnosed with COPD and treatment notes showed it was controlled with the current treatment regimen). This was a clear and convincing reason supported by substantial evidence to discount Dr. Rubin's opined exertional limitations.

### 2. Dr. Sloop

Plaintiff's treating neurologist, Richard Sloop, M.D., completed a medical report on July 30, 2015, and noted there was "little doubt" that Plaintiff's seizures were epileptic seizures and that alcohol contributed to the seizures. Tr. 340-41. Dr. Sloop opined that if Plaintiff stopped drinking entirely, he may still experience occasional seizures. Tr. 341. He prescribed anticonvulsant medication and recommended that Plaintiff keep a seizure calendar. Tr. 341. Dr. Sloop opined that Plaintiff would not need to be on disability and could return to work if he became seizure free. Tr. 341. The ALJ assigned great weight to Dr. Sloop's opinion. Tr. 24.

Plaintiff faults the ALJ for assigning great weight to Dr. Sloop's opinion, arguing that Dr. Sloop's opinion that Plaintiff could return to work if he became seizure free was both conditional and dispositive of disability. ECF No. 14 at 14.

An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Further, the legal conclusion of disability is reserved exclusively to the Commissioner. *See* 20 C.F.R. § 416.927(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . "); *see also McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability."). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan,* 246 F.3d at 1203-04 ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion."). "In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in…20 C.F.R. § 416.927(d). For example, it would be appropriate to consider the supportability of the opinion and its consistency with the record as a whole…" SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). Although an ALJ must provide specific and

legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216.

Although not required to provide specific and legitimate reasons to credit a medical opinion, here the ALJ listed two reasons for assigning credit to Dr. Sloop's opinion. First, the ALJ found that Dr. Sloop's neurology specialization lent greater credibility to his medical opinion. Tr. 24. A physician's specialty is one of several factors the ALJ is required to consider when evaluating medical opinion evidence. 20 C.F.R. § 416.927(c)(5). Second, the ALJ found that Dr. Sloop's opinion was consistent with the longitudinal record. Tr. 24. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Plaintiff does not challenge the ALJ's finding that Dr. Sloop's opinion was consistent with the longitudinal record. ECF No. 14 at 14-15. The Court concludes that the ALJ's evaluation of Dr. Sloop's opinion was based on legally sufficient reasons.

### 3. Dr. Shadrach

Andrea Shadrach, Psy.D., completed a psychological assessment of Plaintiff on July 29, 2016. Tr. 344-51. Dr. Shadrach opined that Plaintiff was able to

complete simple repetitive tasks, follow complex instructions, and understand and

follow instructions from a supervisor. Tr. 348. She opined that Plaintiff's social

interaction and interpersonal relationships were good. Tr. 349. She opined that

Plaintiff would find it very difficult to maintain focused attention when cognitive

flexibility was required, and noted that his ability to retain and recall more detailed

information after 20-30 minutes was poor. Tr. 348-49. Dr. Shadrach opined that

Plaintiff's "ability to adapt to routine changes in a typical work setting may be

impacted by the depressed moods, poor concentration, limited working memory,

poor cognitive flexibility, and increased forgetting." Tr. 349. The ALJ assigned

great weight to Dr. Shadrach's opinion. Tr. 24.

Plaintiff argues that the ALJ erred by fully crediting Dr. Shadrach's opinion

while formulating an RFC that did not account for all of Dr. Shadrach's opined

limitations. ECF No. 14 at 17. Specifically, Plaintiff contends the ALJ failed to

provide reasons for rejecting Dr. Shadrach's opinion that Plaintiff would have

limitations in his ability to adapt to routine changes in a typical work setting, that

he had a poor ability to retain and recall more detailed information after 20-30

minutes, he would find it very difficult to maintain focused attention when

cognitive flexibility was required, and his sustained concentration and persistence

was impaired. ECF No. 14 at 17. "[T]he ALJ is responsible for translating and

incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc.*

*Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a

claimant adequately captures restrictions related to concentration, persistence, or

pace where the assessment is consistent with restrictions identified in the medical

testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To

the extent the evidence could be interpreted differently, it is the role of the ALJ to

resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600.

Where evidence is subject to more than one rational interpretation, the ALJ's

conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The Court will only disturb the ALJ's findings if they are not supported by

substantial evidence. *Hill*, 698 F.3d at 1158.

Here, Dr. Shadrach opined that Plaintiff was able to follow complex

instructions, although he would find it very difficult to maintain focused attention

when cognitive flexibility was required and his ability to retain and recall more

detailed information after 20-30 minutes was poor. Tr. 348-49. She also opined

that Plaintiff's "ability to adapt to routine changes in a typical work setting may be

impacted by the depressed moods, poor concentration, limited working memory,

poor cognitive flexibility, and increased forgetting." Tr. 349. The ALJ

incorporated these findings into the RFC by limiting Plaintiff to "unskilled and

well-learned semi-skilled work." Tr. 21. Although not verbatim, this portion of

the RFC reflects the limitations assessed by Dr. Shadrach. Plaintiff does not

identify medical evidence that contradicts this finding. ECF No. 14 at 17-19. That Plaintiff offers a different interpretation of the evidence is not a sufficient reason to overturn the ALJ's decision. *Burch*, 400 F.3d at 679. The RFC formulated by the ALJ reflects Dr. Shadrach's medical opinion and is supported by substantial evidence. The ALJ did not err in his evaluation of Dr. Shadrach's opinion.

However, even if this Court were to find error in the ALJ's evaluation of Dr. Shadrach's opinion, any error would be harmless in light of the ALJ's second hypothetical posed to the vocational expert. Plaintiff disputes the ALJ's interpretation of Dr. Shadrach's opined limitations in Plaintiff's ability to adapt to routine changes in a typical work setting, poor ability to retain and recall more detailed information after 20-30 minutes, difficulty maintaining focused attention when cognitive flexibility was required, and impaired sustained concentration and persistence. ECF No. 14 at 17. In an alternative hypothetical to the vocational expert, the ALJ included limitations to simple, routine, repetitive work with a skill[5] level of two or less, a routine, predictable work environment with no more than occasional changes and simple decision making, and no work at an assembly line pace or other fast paced work. Tr. 50. The vocational expert testified that such a

---

[5] The administrative hearing transcript notes that the ALJ included a limitation to a "pain" level of two or less, rather than a skill level of two or less. Tr. 50.

hypothetical individual would be able to perform the jobs of kitchen helper, floor waxer, and industrial cleaner.  Tr. 49-50.  As a result, the ALJ noted in his decision that even if he were to find Plaintiff more limited, as outlined in his second hypothetical to the vocational expert, Plaintiff would still not be disabled.  Tr. 26.

### 4. Drs. Brown and Kester

State agency psychiatrists Michael Brown, Ph.D., and Eugene Kester, M.D., reviewed Plaintiff's medical record and completed mental residual functional capacity assessments.  Tr. 66-68, 106-08.  Both doctors opined that Plaintiff could perform simple and repetitive tasks and some learned complex tasks but no new complex tasks, could retain functional capacity for work with customary breaks, and could have only superficial interaction with the public.  Tr. 66-67, 107-08.  The ALJ gave great weight to the opinions of Dr. Brown and Dr. Kester.  Tr. 25.

Plaintiff argues that the ALJ erred by assigning equal weight to the opinions of these reviewing psychiatrists and the opinion of examining psychologist, Dr. Shadrach.  ECF No. 14 at 18-19.  Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits uncontradicted opinion evidence. *Orteza*, 50 F.3d at 750; *Bayliss*, 427 F.3d at 1216.  Plaintiff argues that "[t]he ALJ made no distinction between these opinions and gave no specific and legitimate reasons," however, Plaintiff fails to identify contradictions in these credited

opinions.  ECF No. 14 at 18-19.  Dr. Shadrach opined that Plaintiff was able to complete simple repetitive tasks and follow complex instructions, Tr. 348, and Drs. Brown and Kester opined that Plaintiff would find it very difficult to maintain focused attention when cognitive flexibility was required, Tr. 348-49.  The ALJ assigned great weight to all of these opinions and incorporated their opinions into the RFC by limiting Plaintiff to unskilled and well-learned semi-skilled work.  Tr. 21.  Plaintiff has failed to show how the ALJ erred in assigning great weight to all of these opinions.

### D.    Step Five

Plaintiff argues the ALJ erred at step five.  ECF No. 14 at 19-20.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  Plaintiff contends the ALJ's step five finding was based on an incomplete hypothetical posed to the vocational expert.  ECF No. 14 at 19-20.  However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering Dr. Rubin's medical opinion.  *Id.* at 19.  For reasons discussed throughout this decision, the ALJ's findings regarding the medical opinion evidence are legally sufficient and supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the

national economy based on the hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 31, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE